FILED
08/29/2019
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 9, 2019 Session

**ARNOLD CUNNINGHAM v. SUNICE, INC.**

**Appeal from the Circuit Court for Davidson County**
**No. 16C2588  Kelvin D. Jones, Judge**

_____

**No. M2018-01129-COA-R3-CV**

_____

A Canadian company hired an independent contractor domiciled in Tennessee to market its sportswear to golfers on the PGA Tour. After the Canadian company terminated the contract, the independent contractor filed a breach of contract action in Tennessee. The Canadian company moved to dismiss for lack of personal jurisdiction. Finding insufficient minimum contacts with Tennessee, the trial court dismissed the complaint. On appeal, we conclude that the plaintiff failed to establish sufficient minimum contacts for the exercise of general or specific jurisdiction over the nonresident defendant. So we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which FRANK G. CLEMENT JR., P.J., M.S., and ANDY D. BENNETT, J., joined.

Stephen W. Grace and Delain L. Deatherage, Nashville, Tennessee, for the appellant, Arnold Cunningham.

J. Cole Dowsley, Jr., Franklin, Tennessee, for the appellee, Sunice, Inc.

**OPINION**

**I.**

In 2015, Sunice, Inc., a Canadian company, hired Arnold Cunningham, a Tennessee resident, to promote its golf apparel to professional golf players on the PGA Tour.[1] The work required Mr. Cunningham to travel to a minimum of 30 PGA Tour

_____
[1] The PGA Tour is a series of competitive golf tournaments sponsored by a non-profit

events, with the express goal of making Sunice the "number 1 outerwear on the PGA Tour." Mr. Cunningham marketed and sold Sunice's products at various PGA Tour events throughout the United States, the United Kingdom, and Mexico. After 18 months, Sunice unilaterally terminated the contract.

Following the termination, Mr. Cunningham sued Sunice for breach of contract in the Circuit Court of Davidson County, Tennessee. Sunice responded with a motion to dismiss based upon, among other things, lack of personal jurisdiction. Sunice supported its motion with the sworn declaration of Katherine Cleland, a corporate representative. According to Ms. Cleland, Sunice had no offices, employees, bank accounts, real property, or phone listing in Tennessee. It was not registered or authorized to do business in Tennessee. Sunice was incorporated under Canadian law and maintained its principal place of business in Quebec, Canada. Sunice hired Mr. Cunningham as an independent contractor to serve as Sunice's brand representative on the PGA Tour. The services contemplated in the contract were not specific to Tennessee, but were to be performed throughout the world.

Mr. Cunningham responded with his own declaration detailing Sunice's connections to Tennessee. He claimed that Sunice solicited him to market its sportswear products on the PGA Tour and "particularly at the PGA golf event held annually in Memphis, Tennessee known as the St. Jude Classic." He signed the contract in Tennessee, and Sunice sent both sportswear products and monthly checks to his Tennessee residence. And he represented Sunice at the St. Jude Classic in Tennessee.

The trial court granted the motion to dismiss. The court determined that Mr. Cunningham failed to establish sufficient minimum contacts between Sunice and Tennessee for the exercise of personal jurisdiction.

## II.

The trial court's authority to exercise personal jurisdiction over a nonresident defendant presents a question of law. *Gordon v. Greenview Hosp., Inc.*, 300 S.W.3d 635, 645 (Tenn. 2009). We review the trial court's decision de novo with no presumption of correctness. *First Cmty. Bank, N.A. v. First Tennessee Bank, N.A.*, 489 S.W.3d 369, 382 (Tenn. 2015).

A defendant may challenge personal jurisdiction by filing a motion to dismiss. *Id.* If the motion is supported by affidavits or other written evidence, the "plaintiff then bears the burden of making a prima facie showing of personal jurisdiction, based on its own

---

organization of professional golfers. *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 665 (2001); *Morris Commc'ns Corp. v. PGA Tour, Inc.*, 235 F. Supp. 2d 1269, 1272 (M.D. Fla. 2002), *aff'd*, 364 F.3d 1288 (11th Cir. 2004).

2

evidence." *State v. NV Sumatra Tobacco Trading Co.*, 403 S.W.3d 726, 739 (Tenn. 2013). This requirement is satisfied if the plaintiff demonstrates "sufficient contacts between the defendant and this state with reasonable particularity." *First Cmty. Bank, N.A.*, 489 S.W.3d at 383. The complaint should only be dismissed if all the specific facts alleged by the plaintiff collectively fail to establish a prima facie case of personal jurisdiction. *Id.* at 382. When ruling on a motion to dismiss, we "take all factual allegations in the plaintiff's complaint and supporting papers as true" and "resolve all factual disputes in the plaintiff's favor." *Id.* (quoting *Sumatra*, 403 S.W.3d at 739). But we are "not obligated to accept as true factual allegations . . . that are controverted by more reliable evidence and plainly lack credibility." *Id.* (quoting *Sumatra*, 403 S.W.3d at 735).

The exercise of personal jurisdiction over a nonresident defendant implicates the Due Process Clause of the Fourteenth Amendment. *Gordon*, 300 S.W.3d at 646. Tennessee's long arm statutes authorize our courts to exercise personal jurisdiction on "any basis not inconsistent with the constitution of this state or of the United States." Tenn. Code Ann. §§ 20-2-214(a)(6), 20-2-225(2) (2009). The due process requirements of the Tennessee Constitution and the United States Constitution are co-extensive. *Gordon*, 300 S.W.3d at 646. So the sole issue on this appeal is whether federal due process would allow the trial court to exercise personal jurisdiction over Sunice. *See Mfrs. Consolidation Serv., Inc. v. Rodell*, 42 S.W.3d 846, 855 (Tenn. Ct. App. 2000); *see also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 918-19 (2011) (recognizing that foreign corporations may invoke due process protections in challenging personal jurisdiction).

Our primary focus when resolving questions of personal jurisdiction is "the defendant's relationship to the forum State." *Bristol-Squibb Co. v. Superior Court of California*, 137 S.Ct. 1773, 1779 (2017). To comply with due process, the defendant must have sufficient "minimum contacts" with the forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). The minimum contacts analysis "protects the defendant against the burdens of litigating in a distant or inconvenient forum," and "acts to ensure that the States through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system." *Sumatra*, 403 S.W.3d at 742 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92 (1980)).

Personal jurisdiction may be either specific or general. *Gordon*, 300 S.W.3d at 647. "Specific jurisdiction exists when a defendant has minimum contacts with the forum state and the cause of action arises out of those contacts." *Sumatra*, 403 S.W.3d at 744. General jurisdiction is much broader. *Id.* A court may hear "any and all claims" against defendants whose contacts with the forum state are so "'continuous and systematic' as to render them essentially at home." *Goodyear Dunlop Tires Operations,*

*S.A.*, 564 U.S. at 919 (quoting *Int'l Shoe Co.*, 326 U.S. at 317).

Corporate defendants are generally at home in their "state of . . . incorporation" and "their principal place of business." *First Cmty. Bank, N.A.*, 489 S.W.3d at 385. Only in exceptional cases will a corporate defendant be subject to general jurisdiction beyond these recognized forums. *Id.*; *see Perkins v. Benguet Consol. Min. Co.*, 342 U.S. 437, 447-48 (1952) (concluding that foreign corporation could be subject to suit on unrelated claims in Ohio when the company conducted extensive corporate activities in the forum). Merely "doing business" in the forum state will not suffice. *First Cmty, Bank, N.A.*, 489 S.W.3d at 386. Substantially more is required to make the forum state the corporate home. *Id.*; *see Daimler AG v. Bauman*, 571 U.S. 117, 133 n.11 (2014) (explaining the corporation's activities must be "comparable to a domestic enterprise in that State").

Specific jurisdiction, on the other hand, requires a showing that "the nonresident defendant has purposely established significant contact with the forum state" and the "cause of action arises out of or is related to these activities or contacts." *Gordon*, 300 S.W.3d at 647. The inquiry focuses on the "relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014). As a first step, the court must evaluate the nature, quantity, and quality of the defendant's contacts with the forum and their relationship to the cause of action. *Sumatra*, 403 S.W.3d at 759-60. "'[R]andom,' 'fortuitous,' or 'attenuated' contacts" will not suffice. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). The defendant's contacts are sufficiently meaningful if the contacts "demonstrate that the defendant has purposefully targeted Tennessee" such that the defendant "should reasonably anticipate being haled into court here." *Sumatra*, 403 S.W.3d at 760; *see Burger King Corp.*, 471 U.S. at 475-76. If the plaintiff demonstrates sufficient minimum contacts, the defendant then "bears the burden of showing that, despite the existence of minimum contacts, exercising jurisdiction would be unreasonable or unfair." *Sumatra*, 403 S.W. 3d at 760; *see Burger King Corp.*, 471 U.S. at 476-77.

In evaluating the defendant's contacts with the forum, our focus is on the defendant's contacts with "the forum State itself," not "with persons who reside there." *First Cmty, Bank, N.A.*, 489 S.W3d at 389. "[I]t is essential . . . that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253-54 (1958). "[T]he plaintiff cannot be the only link between the defendant and the forum." *Walden*, 571 U.S. at 285. The defendant's relationship with the plaintiff, standing alone, will not support the exercise of specific personal jurisdiction. *Id.* at 286.

A. GENERAL JURISDICTION

We can quickly dispense with any claim that the exercise of general jurisdiction over Sunice in Tennessee would comport with due process. Tennessee is not Sunice's

4

place of incorporation or principal place of business. And Mr. Cunningham has not established that this is one of the "exceptional cases" in which Sunice's continuous and systematic activities in Tennessee would render it at home here. *See First Cmty, Bank, N.A.*, 489 S.W.3d at 385; *see also Gordon*, 300 S.W.3d at 650 ("To justify the assertion of direct jurisdiction by Tennessee courts, the plaintiff must demonstrate that the defendant's contacts with Tennessee are continuous, systematic, and substantial.").

Sunice's activities in Tennessee were not so substantial or of such a nature as to render the company at home here. *See First Cmty Bank, N.A.*, 489 S.W.3d at 385. Sunice conducts no corporate activities in Tennessee. *Cf. Perkins*, 342 U.S. at 447-48 (detailing the numerous corporate activities Philippine company conducted in Ohio rendering the company at home there). The shipment of sportswear products and the mailing of checks to Tennessee, without more, does not warrant the exercise of general jurisdiction. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 418 (1984) (holding that "mere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of in personam jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions").

## B. SPECIFIC JURISDICTION

Next we consider whether Mr. Cunningham has demonstrated sufficient minimum contacts to support the exercise of specific jurisdiction. Our first task is to evaluate the nature, quantity, and quality of Sunice's contacts with Tennessee and their relationship to the cause of action. *See Sumatra*, 403 S.W.3d 726, 759-60. To support the exercise of specific jurisdiction, Sunice's contacts with Tennessee must be both intentional and substantial. *See First Cmty. Bank, N.A.*, 489 S.W.3d at 389.

The existence of a contract with a Tennessee resident, standing alone, is not enough. *See Burger King Corp.*, 471 U.S. at 478. ("[I]f the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts with the other party's home forum, we believe the answer clearly is that it cannot."). Nor are we concerned with technicalities such as where the contract was executed. *See Nicholstone Book Bindery, Inc. v. Chelsea House Publishers*, 621 S.W.2d 560, 563 (Tenn. 1981). Instead, our focus is on the parties' prior negotiations, the contract terms, and the parties' actual course of dealing. *Burger King Corp.*, 471 U.S. at 479. If this dispute "grew directly out of 'a contract which had a substantial connection with [Tennessee,]'" then the exercise of specific jurisdiction in Tennessee would be presumptively reasonable. *See id.* at 479-80 (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)).

Based on this record, we cannot conclude that Sunice intentionally established a substantial connection with Tennessee. Sunice's knowledge that Mr. Cunningham lived in Tennessee, standing alone, cannot support the exercise of specific jurisdiction. *See*

*Walden*, 571 U.S. at 289 (rejecting a jurisdictional analysis focused on the defendant's knowledge of the plaintiff's "strong forum connections"). Sunice hired Mr. Cunningham to establish a national presence. Their agreement required Mr. Cunningham to "travel to a minimum of 30 PGA Tour events." The fact that he lived in Tennessee and could partially fulfill one of his contract responsibilities by attending a PGA Tour event in Tennessee was merely fortuitous. Other than attending one PGA Tour event in Tennessee, this record does not show that Mr. Cunningham performed any services for Sunice in Tennessee. We can only conclude that Sunice sent monthly checks and products to Tennessee because Mr. Cunningham lived here, not because it sought to avail itself of the privilege of transacting business in Tennessee. *See Pease Const., Inc. v. Crowder-Gulf Joint Venture, LLP*, No. 10-2780, 2011 WL 2118662, at *7 (W.D. Tenn. May 27, 2011) (holding that nonresident defendant's limited dealings with plaintiff in Tennessee occurred solely because the plaintiff happened to be headquartered there). Sunice did not "purposefully target[] Tennessee to the extent that the defendant should reasonably anticipate being haled into court here." *See Sumatra*, 403 S.W.3d at 760.

We conclude that the alleged facts do not demonstrate sufficiently meaningful contacts between Sunice and Tennessee to permit the exercise of specific personal jurisdiction. Because Mr. Cunningham did not meet his burden of proving sufficient minimum contacts, we need not consider whether the exercise of specific jurisdiction over Sunice would be unreasonable or unfair. *See id.* at 760; *see also First Cmty. Bank, N.A.*, 489 S.W.3d at 394.

## III.

In response to Sunice's properly supported motion to dismiss, Mr. Cunningham failed to make a prima facie showing of personal jurisdiction. Thus, we affirm the trial court's dismissal of the complaint.

_____
W. NEAL MCBRAYER, JUDGE

6